## STEPHENSON'S EXECUTORS (UNITED STATES v.). See Case No. 16,386.

<hr>

## Case No. 13,370.

### STEPHENS & C. TRANSP. CO. v. WESTERN UNION TEL. CO.

[Nowhere reported; opinion not now accessible.]

<hr>

## Case No. 13,371.

### STEPHENS & C. TRANSP. CO. v. WESTERN UNION TEL. CO.

### WESTERN UNION TEL. CO. v. STEPHENS & C. TRANSP. CO.

[8 Ben. 502.] [1]

District Court, E. D. New York. July, 1876. [2]

SHIPPING—SUBMARINE CABLE—DAMAGE TO PASSING BOAT—REFUSAL OF ASSISTANCE —NEGLIGENCE.

1. Where a telegraph cable, laid across the Passaic river at Newark, N. J., under water, was caught up by the screw of a propeller that backed up over the crossing-place, and was wound around the shaft, so that the cable was broken and damaged, and the propeller had to go on the dock to get off the cable and repair damage to her machinery: *Held*, that the telegraph company was bound not only to lay, but also to maintain its cable, in such a way as not to interfere with the movements of boats engaged in proper manœuvres at that place;

2. The boat was not in fault in endeavoring to free herself from the cable by such devices and skill as were at her command; nor for refusing an offer of assistance from the employees of the telegraph company, made at a time when it was thought the screw was cleared from the cable:

3. The telegraph company was liable for the injury to the boat, and the owners of the boat were not liable for the injury to the cable.

[Cited in The City of Richmond, 43 Fed. 87.]

The Western Union Telegraph Company had laid, some years previously, submarine cables across the Passaic river, at the draw of a railroad bridge at Newark, N. J. In October, 1872, a propeller the Cement Rock, backed up

<hr>

[1] [Reported by Robert D. Benedict, Esq., and Benj. Lincoln Benedict, Esq., and here reprinted by permission.]

[2] [Affirmed by circuit court. Case unreported.]

to the side of the bridge, near a bulk head where she was accustomed to go, to adjust her course, and one of her twin-screws caught up one of the cables. The officers of the boat, finding that one of the screws had caught on the cable and stopped the engine, undertook to free the screw by working the engine the other way, but only succeeded in catching the cable on the other screw. They continued working their engine back and forth for several hours, pulled the cable out from the shore, and finally broke it off. While they were so engaged, the telegraph company sent word to the boat that they would have men there next morning to free the cable. And about six o'clock the next morning the agent of the company came and from the bridge asked the captain of the boat if he desired help to free the cable. The captain answered that he knew his own business, and at once started his boat to go down the river. The cable proved to be still entangled on the screw, and was at once wound upon the shaft so as to injure the machinery and to make it necessary to take the steamboat to a dock and have the cable cut off. The owners of the steamboat filed a libel against the telegraph company to recover the damage to the boat; and the telegraph company filed a libel against the owners of the boat to recover for the injury to the cable.

T. E. Stillman, for transportation company.
R. D. Benedict and G. W. Soren, for telegraph company.

BENEDICT, District Judge. The first of these actions is brought by the owners of the propeller Cement Rock, to recover for injuries caused to that vessel, by reason of her screw becoming entangled in a cluster of telegraph cables, belonging to the Western Union Telegraph Company and laid across the Passaic river at Newark, N. J.

The second action is brought by the owners of the cable against the owners of the Cement Rock, to recover for the injuries caused to the cable by the same occurrence.

The right of the telegraph company to lay the cable across the river, at the place where it was laid, is conferred by statute and is not disputed. The obligations dependent thereupon I conceive to be these: on the part of the telegraph company, not only to lay the cable in such a manner that it would not catch the bottoms of vessels navigating that water in the ordinary method, but also to maintain it in that condition: on the part of vessels, so to navigate the water as to avoid coming in contact with or disturbing a cable so laid. Here the contention on the part of the telegraph company, in answer to the action of the owners of the propeller, is that the evidence adduced by the propeller does not show how the cable was laid nor how it came to be caught by the screw; whence it is argued that negligence on their part is not proved. But the evidence shows that the propeller, at the time she caught the cable, was light; that she did not

get aground, nor so far as known strike bottom; that, in the performance of an ordinary and necessary manœuvre, which she had the right to suppose could be performed without touching the cable, and in which the cable, if laid upon the bottom, would not have been touched. the cable became wound about the screw. From these facts it is the natural and proper inference that the accident arose from the fact that the cable was out of its proper place, and in some places was raised above the bottom of the river. The conclusion to which these facts point is strengthened by the fact proved, that a loop does sometimes form in a cable and that a loop was afterwards found in one of the cables laid at this point. Upon these facts, and in the absence of evidence as to any facts calculated to lead those in charge of the propeller to suppose that there was danger of catching the cable by putting the screw in motion at this place, I conclude that the accident must be held to be the result of negligence on the part of the telegraph company, in not maintaining the cable in its proper place at the bottom of the river. But it is further contended on the part of the telegraph company, that all the damage that ensued, not only to the propeller but to the cable, was caused by gross negligence on the part of the propeller in the means she adopted to free herself, and that she refused an offer made by the telegraph company to get the cable off, which, if it had been accepted, would have avoided all loss.

It is certainly true that the result shows that the means resorted to for the purpose of freeing the propeller's screw from the cables were not well adapted to that purpose; for in the end the cables became so tightly wound around the screw that it was necessary to dock the vessel and cut the cables off. But what is clear in view of the result was not necessarily so clear without the light of experience. The incident was not of common occurrence. The persons in charge of the propeller were persons of skill and judgment, who had no other desire than to get the cable free from the screw with as little loss as possible. Unquestionably they acted according to the best judgment they were able to form, and there is no evidence which will justify the determination that the course pursued was so plainly wrong as to cast the liability upon the propeller. The language of Dr. Phillimore in the case of The Clara Killam, 3 Asp. 463, that "it was the duty of the ship, if possible, to disentangle her anchor from the cable without injuring it; she was bound to apply ordinary skill, and to take the time necessary for this purpose, unless she thereby exposed herself to present imminent peril," I fully agree with. Here the vessel took the time, and endeavored to free the cable without injuring it. It was in an endeavor to free the cable from the screw, that it became hopelessly wound about the screw. The cable was broken only after the effort to unwind it had been made and failed, and then there was no other way than to break or cut

it. The result of their effort was not foreseen when the effort was made to unwind the cable; and in the face of action taken by intelligent men, who were upon the spot doing what seemed best, I am unable upon my own judgment, passed after the event, to say that the result was so clearly to be foreseen as to entail a liability upon the ground of negligence.

In regard to the refusal of the offer of the telegraph company to free the cable—as I understand the facts, a protracted effort was first made, on the part of the propeller, to free the cable; which resulted in an entanglement of the other screw so that no other way was open but to break or cut the cable. It was therefore, as was supposed, broken, and the vessel, considered to be all clear, started off on the next morning. At that time the employees of the telegraph company appeared, and offered their services in regard to the cable. These were then unnecessary, as was supposed, and the vessel moved off. It was afterwards disclosed that the boat was still fast, another of the cables having caught the screw. This cable parted when the strain came upon it.

A refusal of the services of the telegraph company under such circumstances does not, in my opinion, cast upon the propeller the responsibility for all that occurred. On the contrary, the subsequent events must be held to be the result of the original negligence, which entangled the propeller in the cable.

There must be a decree in the first named action in favor of the libellant with an order of reference, and the libel of the Western Union Telegraph Company must be dismissed with costs.

[On appeal to the circuit court, the above decree was affirmed. Case unreported.]